IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHANNON G. EDWARDS                                                                                    PLAINTIFF

        v.                                     Civil No. 11-3137

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                       DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

        Plaintiff, Shannon Edwards, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

        The plaintiff filed his application for SSI on January 26, 2009, alleging an onset date of February 5, 2004, due to scoliosis, spondylosis of the lumbar spine, obesity, bilateral carpal tunnel syndrome, arthritis, knee pain, history of hernia repair, borderline/low average intelligence, and personality disorder not otherwise specified with schizoid traits. Tr. 10, 115-133, 158, 163-164. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 59-61, 69-71. An administrative hearing was held on January 19, 2010. Tr. 22-54. Plaintiff was present and represented by counsel.

        At the time of the hearing, Plaintiff was 42 years old and possessed an eighth grade education. Tr. 16, 27. He had no previous experience that qualified as past relevant work. Tr. 16, 158-159.

        On August 23, 2010, the ALJ found Plaintiff's scoliosis, spondylosis of the lumbar spine, obesity, bilateral carpal tunnel syndrome, history of hernia repair, borderline/low average intelligence, and personality disorder not otherwise specified with schizoid traits were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

Tr. 12. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 416.967(a) except he can only occasionally climb ramps and stairs and can only occasionally balance and stoop. He can never climb ladders, ropes, or scaffolds and can never kneel, crouch, or crawl. He can frequently but not constantly handle and finger bilaterally. From a mental standpoint, he is able to perform work where interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote with few variables and little judgment; and supervision required is simple, direct, and concrete.

Tr. 14. With the assistance of a vocational expert, the ALJ found Plaintiff could perform work as a production worker. Tr. 17.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 16, 2011. Tr. 1-5. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 6, 7.

The Court has reviewed the entire record in this case, including the transcript of the administrative hearing, Plaintiff's medical records, the ALJ's opinion, and the appeal briefs filed by the parties. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have

supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.     Discussion:**

After reviewing the evidence, the undersigned is plagued by the ALJ's RFC determination. The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Adequate medical evidence must therefore exist that addresses the claimant's ability to function in the workplace. *See Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The Court has held, however, that the ALJ is not at liberty to make medical judgments regarding the ability or disability of a claimant to engage in gainful activity where such inference is not warranted by clinical findings. *McGhee v. Harris*, 683 F. 2d 256 (8th Cir. 1982). And while the issue is not the existence of pain, the issue **is** whether the Plaintiff's experience of pain precludes substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

Plaintiff has alleged disability due to numerous impairments, including bilateral carpal tunnel syndrome, a recurrent inguinal hernia, and personality disorder.

**A.     Bilateral Carpal Tunnel Syndrome:**

On March 24, 2009, Plaintiff underwent a general physical exam with Dr. Shannon Brownfield. Tr. 221-225. He complained of bilateral hand pain and numbness/tingling. An examination revealed a positive Phalen's Sign test.[1] Dr. Brownfield diagnosed Plaintiff with bilateral carpal tunnel, and assessed him with moderate limitations in the hands. He did not, however, define the term moderate.

On July 14, 2009, Plaintiff was treated at the Mission Medical Clinic ("MMC") for complaints of numbness in his right arm. Tr. 285. The doctor noted that Plaintiff was not currently taking any medications, and diagnosed him with intermittent right arm pain.

---

[1]The Phalen's Sign test is performed by resting the patient's elbows on a flat surface with the elbows bent and the forearms up, flexing the wrists and allowing them to hand for 60 seconds. Physical Exam for Carpal Tunnel Syndrome, http://www.webmd.com/pain- management/carpal-tunnel/physical-exam-for-carpal-tunnel-syndrome (last visited October 3, 2012). If pain, numbness, or tingling in the fingers is felt during this time, then it is possible the patient has carpal tunnel. *Id*.

On October 13, 2009, Plaintiff returned to the MMC with continued complaints of right hand symptoms with numbness in fingers. Tr. 289. The doctor diagnosed Plaintiff with recurrent numbness.

On April 1, 2010, the ALJ referred Plaintiff to neurologist, Dr. David Oberlander, to evaluate his pain and numbness in his hands and arms. Tr. 292-293. Plaintiff reported pain and tingling in both hands with paresthesia and radiating neck pain. Nerve conduction studies showed clear cut, bilateral medial nerve compression at the wrist. The study did not, however, indicate the severity of Plaintiff's impairment. And, Dr. Oberlander was not asked to complete an RFC assessment. In fact, the record contains no RFC assessments that were completed after the nerve conduction studies confirmed the diagnosis of carpal tunnel syndrome.

Plaintiff and his mother also testified regarding the limitations imposed by his carpal tunnel syndrome. He reported a limited ability to pick up and hold objects, stating that he often dropped things. Tr. 34. Plaintiff stated that he could only hold a cup by its handle for a short time before his hand began hurting, and could not hold a razor due to his symptoms. Tr. 38. Plaintiff's mother also indicated that Plaintiff frequently (at least once per day) spilled coffee and dropped things. Tr. 42-43.

After reviewing the evidence, the undersigned is convinced that remand is necessary for several reasons. First, we do not find substantial evidence to support the ALJ's determination that Plaintiff could perform frequent handling and fingering.[2] Dr. Brownfield noted that Plaintiff would have moderate limitations with regard to his hands, but did not define the term moderate. And, while the nerve conduction studies revealed bilateral carpal tunnel syndrome, the test did not indicate the severity of Plaintiff's condition or provide any information regarding the limitations imposed by this diagnosis. Accordingly, without an RFC assessment addressing Plaintiff's carpal tunnel syndrome and any resulting limitations, we cannot say that substantial evidence supports the ALJ's assessment. *See Lewis*, 353 F.3d at 646.

---

[2]Frequently means from one third to two thirds of the time. SSR 83-10.

Secondly, we note, as Plaintiff has pointed out, the initial non-surgical treatment for even mild to moderate carpal tunnel syndrome generally involves resting the affected hand and wrist for at least two weeks, avoiding activities that may worsen symptoms, and immobilizing the wrist in a splint to avoid further damage from twisting or bending.  National Institute of Neurological Disorders and Stroke, *Carpal Tunnel Syndrome Fact Sheet*, http://www.ninds.nih.gov/disorders/carpal_tunnel/detail_carpal_tunnel.htm#215203049 (last visited October 3, 2012).  Given the nature of this impairment, it seems obvious that frequent handing and fingering would not be advisable, as it would likely worsen Plaintiff's symptoms.

Therefore, on remand, the ALJ is ordered to obtain an RFC assessment from Plaintiff's treating doctor and/or Dr. Oberlander regarding Plaintiff's ability to use his wrists and hands for repetitive motions and handling and fingering.  The ALJ should also recontact Dr. Brownfield to clarify the term "moderate limitations."

**B.     Inguinal Hernia:**

In March 1992, Plaintiff underwent surgery to repair a  right inguinal hernia.  Tr. 264-268.  Records indicate that this was Plaintiff's second hernia repair procedure.  When Plaintiff was examined by Dr. Brownfield in March 2009, he reported his history of a right inguinal hernia with surgical repair, and indicated that it had returned and was causing him pain.  Tr. 221-225.  Dr. Brownfield diagnosed Plaintiff with an inguinal hernia on the right.  He then assessed Plaintiff with severe limitations with regard to lifting, carrying, and being in one position for a prolonged period of time.

On July 14, 2009, Plaintiff was treated at the MMC for complaints of a right inguinal hernia.  Tr. 285.  The doctor noted a large hernia into the scrotum, but Plaintiff indicated that did not want surgery.

On October 13, 2009, Plaintiff returned to the MMC. Tr. 289. The doctor, again, noted a right inguinal hernia. On examination, he noted that it was not strangulated.[3]

Although the ALJ claims to have reviewed all of the medical evidence, he concludes that Plaintiff did not seek out treatment for his inguinal hernia following his surgery in 1992. As the record shows otherwise, we believe remand is necessary to allow the ALJ to properly evaluate the medical record. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record).

### C. Mental Impairments:

There are also issues regarding the mental RFC determination made by the ALJ. Evidence reveals that Plaintiff had a limited education, a borderline to low average IQ, and suffered from a personality disorder. Plaintiff was assessed by Dr. Charles Nichols in 2005 and 2009. Tr. 217-219. 275-279. IQ scores from 2005 reveal Plaintiff had a full scale IQ of 80, but Dr. Nichols noted there was a 90% probability that his true IQ was between 76 and 84. At this time, Dr. Nichols documented poor personal hygiene, articulation errors (stuttering) making it difficult to understand Plaintiff's speech; below average concentration and pace resulting in difficulty working at the same pace as work peers; a sensitivity to work pressure; and, the ability to understand and remember only simple to moderate directions. He deferred diagnosing Plaintiff, but did assess him with a global assessment of functioning ("GAF") of 50, which is indicative of serious symptoms. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 32 (4th ed. 2000).

In 2009, Dr. Nichols performed a second assessment. This time, he diagnosed Plaintiff with personality disorder not otherwise specified with schizoid traits. Dr. Nichols documented poor insight into the nature of interpersonal and characterological deficits, moderate impairment in the social arena,

---

[3]A hernia is considered strangulated when intestine protrudes through the hall in the abdominal wall. Mayo Foundation for Medical Education and Research, *Inguinal Hernia*, http://www.mayoclinic.com/health/inguinal-hernia/DS00364/DSECTION=complications (last visited October 3, 2012).

and an atypical social presentation likely to cause problems in a work setting requiring frequent interaction with the public. He found Plaintiff to be aloof, but noted that he maintained adequate cognitive activities to perform basic work tasks.

When Dr. Brownfield examined Plaintiff in March 2009, Plaintiff reported being a slow learner. Tr. 221-225. Based on an examination and evaluation, Dr. Brownfield diagnosed Plaintiff with mild mental retardation and assessed him with globally moderate limitations secondary to retardation.

On April 17, 2009, Dr. Brad Williams, a non-examining, consultative psychologist completed a psychiatric review technique form and a mental RFC. Tr. 236-253. After reviewing Plaintiff's medical records, he determined Plaintiff would have moderate limitations with regard to understanding, remembering, and carrying out detailed instructions, maintaining attention and concentration for extended periods, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and respond appropriately to criticism from supervisors, setting realistic goals, and making plans independently of others. He also diagnosed Plaintiff with borderline to low IQ. Dr. Williams opined that he retained the potential for performing basic work. Further, he indicated that Plaintiff could perform work where the interpersonal contact is incidental to the work performed, complexity of the tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete.

In July 2009, the doctor at the MMC also noted that Plaintiff stuttered. Tr. 285.

On July 20, 2009, Dr. Richard Winslow, a second non-examining, consultative psychologist affirmed Dr. Williams' assessment. Tr. 283. He opined that despite Plaintiff's social awkwardness, he had worked without reporting interpersonal problems. Further, Dr. Winslow stated that Plaintiff's family appeared willing to support him, so he had little need to work.

8

During an interview with an agency examiner, Plaintiff was noted to have a speech impairment due to stuttering. Tr. 155. He also had a hard time understanding questions and explanations and seemed easily frustrated. Tr. 155.

While we do note that Plaintiff did not seek out formal mental health treatment, the assessments that are contained in the record are troubling. The ALJ "takes note" of the fact that Plaintiff has worked in the past without interpersonal difficulties and lives at home with a family who is wiling to support him, providing little need for him to work. The ALJ is correct in stating that Plaintiff has performed work in the past, however, none of this work rose to the level of substantial gainful activity. And, although the record does reveal numerous work attempts, none of these positions qualified as past relevant work. Therefore, to say that Plaintiff's past work evidenced his mental ability to perform work-related tasks day in an day out, "in the sometimes competitive and stressful conditions in which real people work in the real world," is not necessarily correct, as he did not maintain these jobs for extended periods of time. " *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

We also take issue with the ALJ's conclusion that Plaintiff's family was willing to help him out, so he had little or no motivation to get a job. While the evidence does indicate that he was living with his parents, it also reveals that he has always lived with his parents. Plaintiff has never lived alone, been married, or had children. And, his numerous unsuccessful work attempts have all occurred while he was living in his parents' home. What the ALJ fails to consider, however, is the evidence documenting Plaintiff's schizoid personality disorder[4] and below average concentration and pace, which Dr. Nichols opined would make it difficult for him to work at the same pace as his peers. Plaintiff also had a limited education, a borderline to low average IQ, a sensitivity to work pressures, and an aloof and socially

---

[4]Schizoid personality disorder is a condition characterized by excessive detachment from social relationships and a restricted range of expression of emotions in interpersonal settings. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 685 (4th ed. 2000).

9

awkward disposition. None of these issues, however, were addressed in the ALJ's mental RFC. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). He merely states that Plaintiff can "perform work where interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote with few variables and little judgment; and supervision required is simple, direct, and concrete." Tr. 14. Accordingly, we believe remand is also necessary to allow the ALJ to reassess Plaintiff's mental limitations.

Given Plaintiff's carpal tunnel syndrome and below average pace, we do not believe Plaintiff is capable of performing production related work or work that involves time sensitive tasks or repetitive hand movements.

### IV.    Conclusion:

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this <u>4th</u> day of October 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

10

AO72A
(Rev. 8/82)